SAMUEL, Judge.
Plaintiff filed this suit to recover property damages sustained by a 25 foot motorboat owned and operated by him when it collided with a 26 foot motorboat owned and operated by defendant. Defendant answered, denying any fault on his part, and reconvened to recover for his personal injuries and property damage resulting from the accident.
After trial on the merits, there was judgment in favor of plaintiff on the main demand; defendant’s reconventional demand was dismissed. Defendant has appealed.
Both vessels were in the Mississippi River-Gulf Outlet, a ship channel which roughly parallels the Mississippi River between New Orleans and the Gulf of Mexico. The channel has a width of 500 feet and runs approximately 75 miles inland. Thirty-five miles from the channel entrance into the Gulf it is crossed by Bayou La Loutre, which runs roughly in an east-west direction. The collision took place near the western entrance of Bayou La Loutre into the channel on August 28, 1971 at approximately 9 p. m., a dark but clear night.
Plaintiff had transported a bar pilot to an outbound ship which he met in the channel some distance south of Bayou La Loutre. With two passengers, the river pilot who had taken the ship down river and another man who had “gone along for the ride”, he was returning up the channel in a northerly direction away from the Gulf. Defendant intended to fish the “flares” at night. With one passenger aboard, his 23 year old stepson, he was proceeding down the channel in a southerly direction. The accident occurred as plaintiff was executing a left turn for the purpose of entering Bayou La Lou-tre. The starboard bow and side of plaintiff’s boat struck the port side of defendant’s boat. Both vessels were damaged and the defendant sustained bodily injuries.
Plaintiff and his two passengers testified his running lights were on and the lights of no other vessel were visible in the vicinity. Their testimony is to the effect that, the defendant vessel’s lights were not on as it was running down the ship channel and, consequently, they were unaware of its presence until too late to avoid the collision.
In substance, the defendant and his stepson testified: The western bank of the channel was 100 to 150 feet to starboard as they proceeded down the channel with their running lights on. When they neared the entrance to Bayou La Loutre they saw a white light separate from several others off the port bow about a mile ahead. The white light appeared to be coming toward them in a course opposite theirs and parallel to their port side. As they observed that light, the stepson told defendant a green light had appeared under the white light approximately 100 yards off their port bow. At this time the defendant realized another vessel was beginning to cross his bow from port to starboard. The defendant maintained both his course and his speed until he ascertained the other vessel did not intend to give way, and then he executed a hard starboard turn in an unsuccessful attempt to avoid the collision.
In the most important area of conflicting testimony, that of whether or not proper lights were being maintained on the defendant vessel at the time of the accident, the trial court accepted the testimony of plaintiff and his two witnesses.
The rules governing navigation of the Mississippi River-Gulf Outlet are known as the Inland Rules of the Road.[1] Article *115 29 of those rules[2] provides that nothing in the rules shall exonerate any vessel from the consequences of any neglect to carry lights or signals or to keep a proper lookout. Given the trial court’s finding that defendant did not have lights on his vessel, Article 29 of the Inland Rules clearly imposed fault upon defendant’s vessel.
Defendant attempts to impose fault on plaintiff’s vessel by claiming plaintiff, the burdened vessel, failed to grant the right of way to him as the privileged vessel. Article 19 of the Inland Rules[3] provides that when two steam vessels cross in such a way to cause risk of collision the vessel being approached from the right shall take evasive action. In addition, Article 22 of the Inland Rules[4] provides every “vessel, which is directed by these rules to keep out of the way of another vessel shall, if the circumstances of the case admit, avoid crossing ahead of the other.” Defendant also refers to Article 21[5] which provides that when for any reason one of two vessels is obliged by the rules to keep out of the way, “the other shall keep her course and speed.”
Applying these rules to the situation before us, defendant’s vessel would, under ordinary circumstances, be privileged with the right of way. However, circumstances of the collision must be carefully considered in determining the effect of such a right of way. It is clear the collision occurred long after sundown and it was a dark night. Especially under these circumstances, mere possession of a statutory right of way does not relieve a vessel or its master from the consequences of imprudent actions. In Postal S. S. Corporation v. The El Isleo,[6] the United States Supreme Court stated the rule as follows:
“. . . The so-called privileged vessel has no absolute right to keep her course and speed regardless of the danger involved in that action. Her right to maintain her privilege ends when there is danger of collision . . ..”
To recognize the statutory right of, way in favor of the defendant’s vessel in these circumstances would negate any duty on the part of a privileged vessel to take evasive action when faced with imminent danger. As we understand the testimony of the defendant himself, he said he maintained his course and speed even after he was aware plaintiff’s vessel would cross his path. In addition, the evidence accepted by the trial court establishes plaintiff turned into defendant’s path because, as a result of the absence of lights on the defendant vessel, neither plaintiff nor his passengers were aware of defendant’s presence.
In Canter v. Koehring Company,[7] our Supreme Court stated:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.”
A similar rule of appellate review applies in federal maritime cases by statute,[8] which provides findings of fact by a trial judge sitting without a jury shall not be set aside unless clearly erroneous and the appellate courts must give due regard to the opportunity of the trial judge to weigh the credibility of the witnesses. Hence, the standard for appellate review of findings of *116 fact in Louisiana and in federal maritime cases is essentially the same.
Here we cannot conclude the trial judge was either manifestly or clearly erroneous in accepting plaintiff’s version of whether or not the defendant vessel’s running lights were being properly maintained at the time of the accident. The trial judge was particularly impressed, and we believe properly, by the testimony of the river pilot because of his experience and expertise in matters such as these.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

. 33 U.S.C.A. § 151 et seq.

. 33 U.S.C.A. § 221.

. 33 U.S.C.A. § 204.

. 33 U.S.C.A. § 207.

. 33 U.S.C.A. § 206.

. 308 U.S. 378, 60 S.Ct. 332, 84 L.Ed. 335 (1940).

. La., 283 So.2d 716, 724.

. 28 U.S.C.A. § 52(a).